**Roberta PRICE, Plaintiff,**

v.

**PUBLIC SERVICE COMPANY OF COLORADO, Defendant.**

Civ. A. No. 92–S–2285.

United States District Court,
D. Colorado.

April 26, 1994.

Daniel Lynch, Denver, CO, for plaintiff.

David Kerber, William Sasz, Kerber & Sasz, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER came before the court for hearing on March 1, 1994 on the Defendant's Motion for Summary Judgment, filed December 15, 1993. The court has reviewed the motion, the Plaintiff's brief in opposition, the Defendant's reply brief, the Plaintiff's Argument filed March 1, 1993, the exhibits, the affidavits, the deposition testimony, the arguments presented by counsel in open court, the entire case file, and the applicable law and is fully advised in the premises.

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Thrasher v. B & B Chemical Company, Inc.*, 2 F.3d 995, 996 (10th Cir.1993) (citations omitted). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324,

106 S.Ct. at 2553; *Applied Genetics Int'l. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). If the nonmoving party fails to make the required showing with respect to any element essential to its case and on which it bears the burden of proof at trial, then the moving party is entitled to summary judgment "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

## A. Plaintiff's First Claim for Relief for Violation of Title VII Based on Sex Harassment, Sex Discrimination, Retaliation, Failure to Promote, and Equal Pay

### 1. Sex Harassment

Courts have recognized two distinct categories of sexual harassment claims under Title VII: (1) *quid pro quo* sexual harassment, and (2) hostile work environment sexual harassment. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir.1987). Price alleges sexual harassment in the form of a hostile work environment.

■ A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *Sauers v. Salt Lake County,* 1 F.3d 1122, 1126 (10th Cir.1993), quoting *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Hostile work environment harassment occurs where sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment. *Sauers,* 1 F.3d at 1126,

quoting *Hirschfeld v. New Mexico Corrections Department,* 916 F.2d 572, 575 (10th Cir.1990). Whether the conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. *Sauers,* 1 F.3d at 1126, quoting *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir.1987). These circumstances may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). The effect on the employee's psychological well-being is relevant to determining whether the plaintiff actually found the environment abusive. *Harris,* —— U.S. at ——, 114 S.Ct. at 371.

Price alleges that Public Service discriminated against her by "knowingly allowing sexual harassment and a hostile work environment to exist without taking corrective action." (Complaint, paragraph 22.b.). Price testified at her deposition about harassment in the form of crude language, suggestive behavior, "sexist remarks," "filthy jokes," inappropriate touching, nude pictures, and sexual pranks that occurred from the late 1970's to the date of her termination on November 7, 1991. (Deposition testimony of Roberta Price, February 18, 1993 pp. 124–50 and February 25, 1993 pp. 164–91, 233–40). Price's January 23, 1994 affidavit reiterates her deposition testimony, with some significant variations.

■ a. First, Public Service asks the court to strike portions of Price's January 23, 1994 affidavit pursuant to *Franks v. Nimmo,* 796 F.2d 1230, 1236–37 (10th Cir.1986), as constituting an attempt to create a sham fact issue regarding her sexual harassment claim. Similar to the situation in *Franks,* 796 F.2d at 1236–37, Price testified under oath in her deposition on two different occasions that she could not specifically remember any dirty jokes or offensive language used in her presence by fellow employees. (Deposition testimony of Roberta Price, February 18, 1993,

pp. 148–50; February 25, 1993, pp. 172–73). On January 23, 1994, in response to the Defendant's motion for summary judgment, Price filed her affidavit specifying seventeen (17) offensive words and phrases used in her presence. (Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment p. 2).

■ In assessing a conflict between an affidavit and an affiant's prior sworn statements, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham issue of fact. *Franks*, 796 F.2d at 1237 (citations omitted). "Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Franks*, 796 F.2d at 1237 (citations omitted).

Careful consideration of the relevant factors convinces the court that Price's January 23, 1994 affidavit is an attempt to create a sham fact issue as to the offensive jokes and language. Price was carefully cross-examined on two separate days when she gave her deposition testimony. As a person who was present at the time of the alleged offensive dialogue, she clearly had access to the relevant information at the time of her deposition. Her deposition testimony was unequivocal that she could not remember any specific words. She makes no explanation in her affidavit as to why she was able to remember seventeen (17) specific words after Public Service filed its motion for summary judgment. Under these circumstances, the court concludes that the conflict between Price's deposition testimony and her affidavit raises only a sham issue as to the offensive jokes or language used in her presence by fellow employees. Accordingly, as to the offensive jokes or language used in her presence by fellow employees, the court will disregard Price's affidavit for the purposes of this motion.

b. Next, Public Service argues that Price's sexual harassment claim is time-barred because the alleged incidents occurred outside the limitations period established by 42 U.S.C. § 2000e–5(e). A plaintiff must timely file a charge of discrimination with the E.E.O.C. before initiating a Title VII action in federal court. 42 U.S.C. § 2000e *et seq.; Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir. 1993) (citation omitted). A charge must be filed with the E.E.O.C. no later than 300 days after the alleged act of discrimination. 42 U.S.C. § 2000e–5(e).

Price filed one discrimination charge with the E.E.O.C. on February 10, 1992, wherein she specifically alleged: (1) discrimination based on her sex and her age; and (2) discrimination in retaliation for complaining "to the Vice President of Electric Engineering and Planning concerning the promotion of a non-degreed male to a position over me." (Exhibit C to Defendant's Motion for Summary Judgment). Price made no mention of sexual harassment in her February 10, 1992 charge. On August 6, 1992, Price filed a second discrimination charge with the E.E.O.C., reiterating the allegations from her February 10, 1992 charge and additionally alleging that she was being paid less than males for doing the same or similar work and that "women in general, and myself in particular were subjected to sexual harassment by male supervisors and co-workers." (Exhibit D to Defendant's Motion for Summary Judgment). Price filed the second E.E.O.C. charge "because the original charge did not cover everything." (Deposition testimony of Roberta Price, February 18, 1993 p. 35–37).

Price filed this civil action on November 6, 1992. Public Service argues that sexual harassment claims related to events occurring before October 8, 1991 are time barred. Price responds that her August 6, 1992 E.E.O.C. charge relates back to her February 10, 1992 E.E.O.C. charge and that the sexual harassment was a series of related acts under the continuing course of conduct doctrine that continued from 1978 until the date of her November 7, 1991 termination.

■ First, the August 6, 1992 E.E.O.C. charge adding claims of sexual harassment and unequal pay is neither sufficiently relat-

ed to nor falls within the scope of the claims presented in the February 10, 1992 charge, so it cannot relate back to the February 10, 1992 E.E.O.C. charge. See *Jordan v. U.S. West Direct Co.*, 716 F.Supp. 1366, 1367 (D.Colo.1989). Because the August 6, 1992 E.E.O.C. charge adding claims of sexual harassment and unequal pay does not relate back to the February 10, 1992 E.E.O.C. charge, the relevant statutory time period extends back to 300 days before August 6, 1992; in other words, to October 8, 1991.

■ Under the continuing course of conduct doctrine, a claim of discrimination may include challenges to incidents which occurred outside the statutory time limitations of Title VII if the various acts constitute a "continuing pattern of discrimination." *Martin*, 3 F.3d at 1415 (citation omitted). There must, however, be at least one instance of the discriminatory practice within the filing period for the doctrine to apply, and the earlier acts must be a part of a continuing policy or practice that includes the act or acts within the statutory period. *Martin*, 3 F.3d at 1415 (citation omitted); *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987), *reh'g. denied*, 842 F.2d 253 (1988).

■ The Tenth Circuit Court of Appeals has adopted a three-part inquiry for determining whether Title VII claims fall within the continuing violation exception to the time bar. Although these factors are not exhaustive, at a minimum the court should examine: (1) whether the acts alleged involve the same type of violation; (2) whether the acts are recurring or isolated; and (3) whether the acts have the degree of permanence such that the employee is on notice of the duty to assert her rights. *Martin*, 3 F.3d at 1415 (citation omitted); *Purrington v. University of Utah*, 996 F.2d 1025, 1028 (10th Cir.1993) (citation omitted). Permanency relates to what a plaintiff knew or should have known at the time the violations occurred. *Purrington*, 996 F.2d at 1028. If an event or series of events should have alerted a reasonable person to act to assert her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge with the E.E.O.C. with respect to

that event or series of events. *Martin*, 3 F.3d at 1415 n. 6 (citation omitted).

■ Price alleges a course of discriminatory treatment on the basis of sex. Although she cannot recite the specific dates of any incidents, Price has stated:

"[S]exual harassment was a continual feature of employment at Public Service Company over the entire time I worked there, including, but by no means limited to the last 300 days.... Apart from the jokes, language casually used in the presence of females was scatological or obscene.... male employees would openly use sexually explicit hand gestures such as simulated masturbation.... such language and gestures were used throughout my tenure, including the 300 days before EEOC complaint.... Throughout my tenure with Public Service, including the last 300 days, other grosser forms of sexual harassment were tolerated implicitly, if not officially condoned.... Over the time I worked there, my breasts and bottom were lasciviously touched and my nipples pinched.... Persons unknown ejaculated on my desk on two occasions.... Pubic hairs and a condom was taped to my desk next to the ejaculate on the second occasion.... females were treated deprecatingly and in patronizing fashion.... The point is that there was a pervasive cultural climate of sexual harassment and hostility to females within the Department of Public Service in which I worked which existed before I came and which never substantially altered . . .

(Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment pp. 1–5; Deposition testimony of Roberta Price, February 18, 1993 pp. 123–150; February 25, 1993 pp. 157–195).

Examining Price's allegations in light of the factors adopted by the Tenth Circuit in *Martin*, 3 F.3d at 1415 (citations omitted), the court concludes that Price has introduced sufficient facts to raise a triable issue on whether Public Service engaged in a continuing course of discrimination such that the court should consider the incidents that occurred prior to the 300 day time limitation.

The first two factors weigh in favor of a continuing violation. First, Price alleges many acts that involve the same type of sexual harassment. Second, the incidents are alleged to have occurred consistently and frequently over the course of her employment. Price asserts that she was harassed from the beginning of her employment until she was terminated approximately fourteen (14) years later. Her deposition and her affidavit describe a continuing pattern of sexual harassment. She alleges Public Service allowed an atmosphere of sexual harassment to exist even after it had notice. See *Martin*, 3 F.3d at 1415–16.

The third factor of permanence weighs against Price. She allowed this sexual harassment to continue for approximately fourteen (14) years before she filed her August 6, 1992 complaint with the EEOC. Price's deposition testimony indicated that she knew or should have known to act to assert her rights at the time of the violations:

Q. From your first EEOC complaint back in the early '80s you knew about that procedure, that you had available the opportunity to file a complaint with the EEOC?

A. Correct.

Q. You knew that the actions of Public Service that you allege, the discrimination on the basis of age, sex and retaliation for complaining about discrimination and harassment, you knew those actions were unlawful?

A. I did.

Q. When did you—you knew that back in the early '80s?

A. I did.

Q. You knew you could seek agency relief?

A. I did.

Q. You knew that in the early '80s?

A. Yes.

Q. And you knew you could see a lawyer?

A. Correct.

Q. And, in fact, you did see a lawyer in the early '80s?

A. I did.

(Deposition testimony of Roberta Price, February 25, 1993 pp. 284–85). Price had also previously filed a charge of discrimination with the EEOC in 1982, alleging sexual harassment and retaliation that was affecting her advancement, promotion, pay, performance ratings, and merit points. (Exhibits L and M to Defendant's Motion for Summary Judgment). Nevertheless, following the reasoning of the Tenth Circuit in *Martin*, 3 F.3d at 1416, and given the analysis under the first two factors, the court believes it is constrained to conclude that Price has shown enough to avoid summary judgment on the statute of limitations issue as to her sexual harassment claim. The court will further evaluate these factors in light of the evidence as it develops at trial. See *Martin*, 3 F.3d at 1416. The court will also further evaluate at trial whether Price's evidence is sufficient to establish a hostile work environment claim. At this time, Public Service's Motion for Summary Judgment on Price's sexual harassment claim must be denied.

### 2. *Sex Discrimination*

■ Price alleges she was terminated from her employment based on her sex. (Complaint paragraph 22.a.). While she concedes that her sex discrimination claim is based primarily on retaliation, she argues that the claim also stands alone based on statistics. (Plaintiff's Brief in Opposition to Motion for Summary Judgment p. 11). The only apparent support for this sex discrimination claim is Price's allegation that women were disproportionately affected by the November 7, 1991 layoff.

■ The Supreme Court has established, and the Tenth Circuit has repeatedly adopted, a three-part test to determine whether a plaintiff has established a prima facie case under Title VII for a wrongful termination claim. Initially, the plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified and satisfactorily performing her job; and (3) she was terminated under circumstances giving rise to an inference of discrimination. *Martin*, 3 F.3d at 1416–17 (citations omitted). Once the plaintiff meets this burden, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the deci-

sion which adversely affected the employee. Once the defendant has set forth a facially nondiscriminatory reason for the decision, the plaintiff assumes the burden to prove that the employment decision was the result of intentional discrimination based on an impermissible motive. The plaintiff can prevail either directly by proving that the employer acted with a discriminatory motive or indirectly by showing that the stated reason for the discharge was a pretext for discrimination prohibited by Title VII. *Martin*, 3 F.3d at 1417 (citations omitted); *Shapolia v. Los Alamos Natl. Laboratory*, 992 F.2d 1033, 1036–37 (10th Cir.1993) (citation omitted); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159–61.

Price does not discuss the grounds for her sex discrimination claim in her affidavit. Price indicated in her deposition that thirty percent (30%) of the eighteen (18) people laid off on November 7, 1991 were women. (Deposition testimony of Roberta Price, February 25, 1993 pp. 210–15). Public Service has presented evidence that Price's job was eliminated subsequent to a neutral Functional Analysis, the goal of which was to examine all of the roles that were being performed and to determine if the company could increase the efficiency of its operations. Public Service has presented evidence that the Functional Analysis analyzed jobs without regard to the individuals in the jobs. (Exhibits A, B, I, Q to Motion for Summary Judgment). Public Service has presented evidence that only four of the eighteen individuals laid off were women, that none of those women shared common job responsibilities, that the Functional Analysis for these women was performed by supervisors other than Price's, and that two of these women found other jobs at Public Service.

While Price alleges she would present evidence that no Functional Analysis was ever done, she has no specific facts or evidence now before the court showing that Public Service's Functional Analysis was a pretext for eliminating her position based on sex discrimination. First, Price has nothing more than her own conclusory allegations to support her claim. She does not have any evidence of the total number of Public Ser-

vice employees, she has only her own estimations of how many women were in her department, and she has no expert evidence of the significance of her statistics. Actually, Price was the only individual terminated from her department. She has gone outside her department when counting women laid off on November 7, 1991. Second, Price's statistical sample is too small to have any significance. Two of the women laid off found other jobs within the company, rendering Price's statistical sample too small to be probative. The court concludes that Price has not mustered enough evidence that Public Service acted with a discriminatory motive or that the Functional Analysis was a pretext for discrimination prohibited by Title VII. *See E.E.O.C. v. Flasher*, 986 F.2d 1312, 1317–21 (10th Cir.1992). Public Service is entitled to summary judgment on Price's sex discrimination claim.

### 3. Retaliation

Title VII provides that "[I]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this title, ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e–3(a). To support a claim of retaliation,

> [a] plaintiff must first establish a prima facie case of retaliation. If a prima facie case is established, then the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff.

*Sauers*, 1 F.3d at 1128, quoting *Sorensen v. City of Aurora*, 984 F.2d 349, 353 (10th Cir. 1993).

In order to establish a prima facie case for retaliation, a plaintiff alleging that she was retaliated against for filing a prior discrimination claim must show: (1)

that she engaged in a protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer subsequent to the protected activity; and (3) a causal connection between the employee's activity and the adverse action. *Griffith v. State of Colorado,* 17 F.3d 1323, 1331 (10th Cir.1994), citing *Archuleta v. Colorado Dept. of Institutions,* 936 F.2d 483, 486 (10th Cir.1991); *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994); *Purrington,* 996 F.2d at 1033; *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993). The Plaintiff must show a causal connection, that is, a retaliatory motive playing a part in the adverse employment action. *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980).

 Price did not argue specifically in support of her retaliation claim at the March 1, 1994 hearing. In her affidavit, Price alleges that she was terminated in retaliation for her "longstanding complaints over pay, promotion, and sexual harassment." (Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment pp. 13–14). Price alleges that she worked under a continual threat of being fired since her 1982 E.E.O.C. complaint and that she had conflicts with Phil Criste and Richard Blatnik that resulted in her termination. (Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment pp. 13–16). Price also alleges that the "Functional Analysis" articulated by Public Service as the reason for her termination was a sham or pretext for discrimination against her. (Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment pp. 16–19).

 The court concludes that Price cannot prove the requisite causal connection between any of the alleged acts and her termination. First, although Price alleges she was continually threatened with being fired since her 1982 E.E.O.C. complaint, the evidence shows that she received good performance reviews, promotions, and pay raises since 1982. Neither does Price offer any evidence that her supervisors knew of her 1982 E.E.O.C. complaint. Second, Price's conflicts with Mr. Criste and Mr. Blatnik over her refusal to sign or falsify certain documents did not arise out of "any practice made an unlawful employment practice" by Title VII. Therefore, Title VII does not apply to any retaliation Price suffered from these specific activities. Third, Price alleges that the Functional Analysis was a sham, "not based on function, but on personality." (Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment pp. 16–18). The plaintiff in a Title VII case must prove that *intent* to discriminate *based upon* plaintiff's protected class characteristics was the determining factor for the allegedly illegal employment decision. *Sanchez v. Philip Morris, Inc.,* 992 F.2d 244, 246–47 (10th Cir.1993) (Emphasis in original). Public Service did not violate Title VII by differentiating based on personality. Fourth, Price has no specific facts or evidence showing that Public Service's Functional Analysis was a pretext for discrimination. Public Service has presented the Functional Analysis as a legitimate nondiscriminatory reason for Price's termination. (See Exhibits A, B, and Q to Motion for Summary Judgment). Even if a plaintiff proves that a defendant's articulated reason is not worthy of credence, the plaintiff must still prove that the true motive for the employment decision violates Title VII. *Sanchez,* 992 F.2d at 247. Although Price says she has witnesses that will testify that no Functional Analysis was conducted, none of this evidence is presently before the court. On summary judgment, Price cannot rest on mere allegations, but must come forward with specific facts showing that there is a genuine issue for trial as to elements essential to her case. *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56; *Bacchus,* 939 F.2d at 891.

Accordingly, because Price cannot show any causal connection between her protected activities and her termination and because she cannot demonstrate that the Functional Analysis was a pretext for discrimination, Public Service is entitled to summary judgment on Price's claim for retaliation in violation of Title VII.

#### 4. *Failure to Promote*

The Supreme Court has developed a four-part test to determine whether a plaintiff has established a prima facie case of discriminatory failure to promote under Title VII. The plaintiff must show: (1) that she belongs to a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applications; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications. *Hooks v. Diamond Crystal,* 997 F.2d 793, 796 (10th Cir. 1993) (citations omitted).

Prior to the March 1, 1994 hearing, Price alleged eight occasions that she should have been promoted. (Price's Response to Interrogatories, Exhibit H to Motion for Summary Judgment). Price must concede that all but one of these promotion opportunities occurred outside the 300–day limitations period of Title VII, but argues that the failure to promote her was a continuing violation that occurred over the fourteen (14) years she worked at Public Service. In her affidavit and at the hearing, Price indicated that her failure to promote claim rests primarily on the "lead person" designation that was given to Wendy Allstot sometime in 1991.

Under the continuing course of conduct doctrine, a claim of discrimination may include challenges to incidents which occurred outside the statutory time limitations of Title VII if the various acts constitute a "continuing pattern of discrimination." *Martin,* 3 F.3d at 1415 (citation omitted). There must, however, be at least one instance of the discriminatory practice within the filing period for the doctrine to apply, and the earlier acts must be a part of a continuing policy or practice that includes the act or acts within the statutory period. *Allen v. Denver Public School Board,* 928 F.2d 978, 984 (10th Cir. 1991), citing *Furr,* 824 F.2d at 1543–44; *Martin,* 3 F.3d at 1415 (citation omitted).

Even if the court were to accept Price's argument that the denial of these promotion opportunities constituted a series of related acts under the continuing course of conduct doctrine, Public Service is entitled to summary judgment on the single promotion opportunity that falls within the limitations period. First, the "lead person" position did not remain open. Second, the "lead person" designation was given to another woman, a member of the same protected class. Third, Price concedes that the lead person designation was not equivalent to a promotion, but alleges that it was a necessary prerequisite for a promotion. However, Price offers nothing more than her own conclusory allegations that the "lead person" designation was a necessary prerequisite for a promotion. Price offers no evidence that Public Service used this criterion. Price cannot avail herself of the continuing violation doctrine because the only link to bring the time-barred promotions into the continuing violation doctrine is the "lead person" designation. Because Price cannot prevail on the "lead person" designation claim, she can make no connection to the previous alleged denials of promotion opportunities. Thus, all the other alleged denials of promotion opportunities are untimely. Public Service is entitled to summary judgment on Price's failure-to-promote claim.

#### 5. *Equal Pay*

In order to make a prima facie case under Title VII for wage discrimination, a plaintiff must initially prove a differential in pay based on sex for performing equal work. *Woodward v. Heritage Imports,* 773 F.Supp. 306, 309 (D. Utah 1991) (citations omitted). The positions compared must be substantially equal. The test for determining whether the two positions are substantially equal is whether the two positions involve substantially equal skill, effort, responsibility and working conditions. *Woodward,* 773 F.Supp. at 309 (citations omitted).

At the March 1, 1994 hearing, Price indicated that her Title VII claim based on equal pay rests on her allegations that Dixon Cravens, who did not have a college degree, obtained a pay grade of 50 while Price, who had a college degree, was denied pay grade 50. Price indicates that she was better qualified than Cravens (Affidavit of Roberta

Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment p. 10) and that his salary was substantially higher than hers even when he was at a lower grade level than she. (Deposition testimony of Roberta Price, February 18, 1993 pp. 54–55). But, Price has no evidence that the positions held by Cravens or any other males involved substantially equal skill, effort, responsibility and working conditions. Actually, Price has testified that her position was different and that she did different work. (Deposition testimony of Roberta Price, February 18, 1993 pp. 54–64; February 25, 1993 pp. 289–92). It is apparent that Price cannot make a prima facie case under Title VII for wage discrimination and that Public Service is entitled to summary judgment.

**B. Plaintiff's Second Claim for Relief for violation of the ADEA, 29 U.S.C. § 621 et seq.**

■ Price alleges that age was a motivating factor in Public Service's decision to eliminate her position. (Complaint paragraphs 26–31). At some times, Price has based her ADEA claim on three theories: (1) certain remarks allegedly made by William Martin in Exhibit L to Plaintiff's Brief in Opposition to Motion for Summary Judgment; (2) a comment made by Pat McCarter; and (3) certain statistics inferring discriminatory termination based on age. (Deposition testimony of Roberta Price, February 25, 1993 p. 216). At other times, Price has limited the basis for her ADEA claim to her statistical interpretation of the November 1991 layoffs. (Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment p. 21; Complaint paragraphs 26–31).

■ Generally, a plaintiff must establish a prima facie case of age discrimination by a preponderance of the evidence. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1425 (10th Cir.1993), citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The plaintiff makes out a prima facie case by showing that: (1) she was in the protected age group; (2) she was doing satisfactory work; (3) she was discharged; and

(4) her position was filled by a younger individual. *Cone v. Longmont United Hospital Ass'n*, 14 F.3d 526, 529 (10th Cir.1994). In a reduction in work force case like the instant case, the fourth element has been altered, so that a plaintiff must present evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1401 (10th Cir.1988). Once the plaintiff establishes a prima facie case, a presumption of unlawful discrimination is created and the burden shifts to the employer "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason." *Faulkner*, 3 F.3d at 1425, citing *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. The employer "need not persuade the court that it was actually motivated by the proffered reasons," but satisfies its burden merely by raising "a genuine issue of fact as to whether it discriminated against the plaintiff." *Faulkner*, 3 F.3d at 1425, citing *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. If the burden of production is carried by the defendant, the plaintiff is given the opportunity to prove the reasons provided by the employer are a pretext for discrimination. The plaintiff retains the ultimate burden of proving he or she was the victim of intentional discrimination. *Faulkner*, 3 F.3d at 1425, citing *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94.

■ Disparate treatment is a cognizable theory of discrimination under the ADEA. *Faulkner*, 3 F.3d at 1424, citing *Hazen Paper Co. v. Biggins*, —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). A disparate treatment claim exists when an employer treats an individual less favorably than others because of his or her protected status. *Faulkner*, 3 F.3d at 1424 (citations omitted). Because disparate treatment is a form of intentional discrimination, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Faulkner*, 3 F.3d at 1424, citing *Biggins*, —— U.S. at ——, 113 S.Ct. at 1706.

While the Tenth Circuit has never directly addressed whether a disparate impact claim is cognizable under the ADEA, it has indicated that the prudent course is to merely assume the applicability of the disparate impact analysis without deciding whether it is a viable theory of recovery under the ADEA. *Faulkner,* 3 F.3d at 1428. A disparate impact theory of recovery involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Faulkner,* 3 F.3d at 1428, citing *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977). Unlike disparate treatment, the disparate impact theory does not require proof of discriminatory motive or intent. *Faulkner,* 3 F.3d at 1428, citing *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1242 (10th Cir.1991).

To establish a prima facie case of disparate impact discrimination, the plaintiff must show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group. *Faulkner,* 3 F.3d at 1428, citing *Ortega,* 943 F.2d at 1242. Statistics may be used by the plaintiff to establish a prima facie case of disparate impact, *Faulkner,* 3 F.3d at 1428, citing *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 650, 109 S.Ct. 2115, 2121, 104 L.Ed.2d 733 (1989), but a plaintiff must show more than mere statistical disparities. *Smith v. Denver Public School Board,* 767 F.Supp. 226, 229 (D.Colo.1991). The plaintiff must also identify an employment practice responsible for an observed disparate impact. *Wards Cove,* 490 U.S. at 657, 109 S.Ct. at 2124–25. Once an employment practice has been identified, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice has caused the disparate impact on members of a protected group. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 2788–89, 101 L.Ed.2d 827 (1988).

A plaintiff who succeeds in establishing a prima facie case of disparate impact does not automatically survive a motion for summary judgment. *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1121 (10th Cir.1991) (citations omitted). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence demonstrating a "business justification" for its employment practices. *Faulkner,* 3 F.3d at 1428, citing *Wards Cove,* 490 U.S. at 658, 109 S.Ct. at 2125. A business justification proffered by an employer must have a manifest relationship to the employment in question. *Faulkner,* 3 F.3d at 1429 (citations omitted). An employer satisfies the burden of production by presenting its reasons for the challenged actions with sufficient specificity to allow the plaintiff to demonstrate pretext. *Faulkner,* 3 F.3d at 1434, citing *Pitre v. Western Electric Co.,* 843 F.2d 1262, 1265–66 (10th Cir.1988). If the employer presents such evidence, the plaintiff may still prevail if he or she can persuade the factfinder that other tests or selection devices, without a similarly undesirable disparate effect, would also serve the employer's legitimate interests. *Faulkner,* 3 F.3d at 1428–29 (citations omitted). The ADEA "is not intended as a vehicle for judicial review of employment decisions which are made in good faith and are not actuated by age bias." *Faulkner,* 3 F.3d at 1426, citing *Grebin v. Sioux Falls Indep. Sch. Dist. No. 49–5,* 779 F.2d 18, 20 n. 1 (8th Cir.1985). Neither is the ADEA a vehicle for reviewing the propriety of business decisions. The court will not second guess business decisions in the absence of some evidence of impermissible motives. *Faulkner,* 3 F.3d at 1426–27, citing *Lucas,* 857 F.2d at 1404.

Price's allegations under the ADEA fail under both a disparate treatment and a disparate impact analysis. Public Service has produced evidence of a legitimate nondiscriminatory business justification for its employment decision. (See Exhibits A, B, and Q to Motion for Summary Judgment). Public Service states that Price's job was eliminated subsequent to a neutral Functional Analysis, the goal of which was to examine all of the roles that were being performed and to determine if the company could increase the efficiency of its operations. Price's evidence is not sufficient for a factfinder to reasonably conclude either that the

950

employer intended to discriminate in reaching the decision to eliminate Price's position or that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group. See *Lucas*, 857 F.2d at 1401.

■ First, age-related comments by non-decisionmakers are not material in showing an employer's action was based on age discrimination. *Cone*, 14 F.3d at 531. Upon review of Price's allegations of remarks and comments made by Public Service employees, the court finds insufficient support for Price's ADEA claim. Price has not shown that these people were decisionmakers, and the comments do not convey what Price alleges. (See Deposition testimony of Roberta Price, February 25, 1993 pp. 195–208). Nowhere does Mr. Martin make the kind of oral assurances that Price is alleging and Price admits that Mr. McCarter did not act on his comment. (See Exhibit L to Plaintiff's Brief in Opposition to Motion for Summary Judgment; Deposition testimony of Roberta Price, February 25, 1993 pp. 207–08).

Second, Price's statistical analysis does not show age discrimination. Among other things, Price's statistical sample is too small to be probative and does not eliminate non-discriminatory explanations for the disparity between comparable individuals. See *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746–47 (10th Cir.1991). There were no other Budget Analysts in Price's department, so there are no equivalent positions with which to compare her position. (Deposition testimony of Roberta Price, February 18, 1993 pp. 67–68). Consistent with the Functional Analysis, Price's job was eliminated and her duties were divided between several employees. (Deposition testimony of Roberta Price, February 25, 1993 pp. 210–15). While fifteen out of eighteen people laid off on November 7, 1991 were over forty years of age, at least four of those fifteen individuals were hired back in other positions, making the total eleven out of eighteen, a percentage that a factfinder could not find statistically significant.

Finally, Price has no specific facts or evidence showing that the Functional Analysis was a pretext for eliminating her position

based on age discrimination. Even if Price proves that Public Service's articulated reason is not worthy of credence, she must still prove that the true motive for the employment decision violates the ADEA. *See Sanchez*, 992 F.2d at 247. Price's generalized testimony of her subjective belief that her discharge was the result of age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for her discharge. *See Elliott v. Group Medical & Surgical Service*, 714 F.2d 556 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). The court concludes that, even assuming Price can make a prima facie case for age discrimination, she cannot meet her burden on summary judgment of discrediting Public Service's legitimate, nondiscriminatory reason for terminating her. Public Service is entitled to summary judgment on Price's ADEA claim.

## C. Plaintiff's Third Claim for Relief for Breach of Contract

■ In her complaint, Price alleges causes of action for breach of "written and oral policies and procedures" which "constituted a unilateral contract of employment." (Complaint, paragraphs 33, 34). Price alleges that Public Service breached the alleged contract by: (1) discriminating against her based on her sex; (2) allowing sexual discrimination to continue without properly investigating complaints; (3) retaliating against her for reporting sex discrimination; and (4) terminating her based on her age, her sex, and retaliation. (Complaint, paragraph 36).

The court notes initially that "[T]here is no virtue is pleading a profusion of claims for relief when the law provides a well-established and straightforward remedy. Indeed, the practice is inimical to the interests of the litigants...." *Price v. Federal Express Corp*, 660 F.Supp. 1388, 1395 (D.Colo.1987). This is a Title VII discrimination case.

■ In a Title VII case, state law will be preempted by Title VII if the state law stands as an obstacle to the accomplishment and execution of the full purposes and objec-

tives of Congress. *California Federal Savings & Loan Assn. v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689–90, 93 L.Ed.2d 613 (1987). Where a plaintiff asserts a tort claim that rests on the same facts as a Title VII discrimination claim asserted in the action, the tort claim will not survive. *Cook v. Rocky Mountain Bank Note Company,* 974 F.2d 147 (D.Colo.1991). The proper question is whether the plaintiff's tort claims, while arising out of the same set of facts, are completely distinct from discrimination: *Baird v. Haith,* 724 F.Supp. 367, 373 (D.Md. 1988). The court believes that this reasoning applies to Price's Third Claim for Relief. Price's breach of contract claim relies on the same specific facts as her claims under Title VII. In alleging that an implied employment contract was breached by violations of Title VII, she has not alleged any facts or legal theories independent of the purposes and objectives of Title VII. Accordingly, Title VII preempts Plaintiff's Third Claim for Relief and Public Service is entitled to summary judgment on Price's Breach of Contract claim.

### D. Plaintiff's Fourth Claim for Relief for Promissory Estoppel

In her complaint, Price's Fourth Claim for Relief for Promissory Estoppel is based on her reliance on "oral and written representations regarding the terms and conditions of employment." The complaint alleges that Price relied on oral and written representations as commitments to which Public Service would adhere. (Complaint paragraphs 39–41). However, Price has admitted in her deposition testimony and her affidavit that she "had long since ceased to believe the assurances I had also been given about fairness to women and the company's non-discrimination policies." (Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment p. 19; Deposition testimony of Roberta Price, February 25, 1993 pp. 341–350). At the March 1, 1994 hearing, the Plaintiff indicated that her promissory estoppel claim is really based on alleged oral promises that she would never be laid off from Public Service as long as she did her job properly. Price's complaint does not contain any allega-

tion regarding reliance on such oral promises. At the March 1, 1994 hearing, Price requested for the first time permission to amend her complaint to include this allegation.

Motions to amend are committed to the trial court's discretion. *Schepp v. Fremont County,* 900 F.2d 1448, 1451 (10th Cir.1990); *Las Vegas Ice and Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir.1990); *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127, 1132 (10th Cir.1987). Leave to amend should be freely given based on the balancing of several factors, including futility, delay, bad faith, dilatory motive, repeated failure to cure deficiencies, and prejudice to the opposing party. *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir.1991). Although Fed. R.Civ.P. 15(a) requires leave to amend be given freely, that requirement does not apply where an amendment obviously would be futile. *T.V. Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1028 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 601, 121 L.Ed.2d 537 (1992) (citations omitted). Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted. *Id.*

In light of the factors to be considered, the court believes the requested amendment should be denied. The factual basis for Price's amendment constitutes three alleged promises: (1) "[T]hat assurance was given to me before I went to work for the company by Clark Stevens, the Supervisor of Employment, with whom I interviewed;" (2) "[L]ater, I received the same assurance from various management personnel in public meetings of employees within the Electric Engineering and Planning Organization;" and (3) "[T]he last time I was told there would be no layoffs was by William Martin, Vice President of Electric Engineering and Planning." (Affidavit of Roberta Price, Exhibit A to Plaintiff's Brief in Opposition to Motion for Summary Judgment pp. 19–20). First, the court has reviewed the transcript of William Martin's November 7, 1991 statements that purportedly support Price's request to amend her complaint. Nowhere in the transcript does Mr. Martin make the kind of oral

assurances that Price is alleging. Second, Price admitted that she did not rely on Mr. Martin's statements. (Deposition testimony of Roberta Price, February 25, 1993 pp. 346–348). Third, even assuming Price's affidavit to be true, the alleged assurance by Clark Stevens was made during the interview process before Price was even employed by Public Service. Fourth, Price's allegation that the same assurance was made by "various management personnel" does not qualify under the summary judgment standard as specific facts showing that there is a genuine issue for trial. The alleged oral assurances are too vague to constitute enforceable promises of job security. *Dupree v. United Parcel Service, Inc.*, 956 F.2d 219, 222 (10th Cir.1992). Price has invented a new theory in response to Public Service's motion for summary judgment. Price offers no explanation for waiting until the hearing on the motion for summary judgment to attempt to amend her complaint to add an alleged promise that she has allegedly relied on for more than fourteen (14) years. Accordingly, Price's request to amend her Fourth Claim for Relief should be denied.

Price cannot meet her burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to her claim for promissory estoppel. Because Price's complaint does not contain any allegation regarding reliance on oral promises of permanent employment at Public Service, Public Service is entitled to summary judgment on the Fourth Claim for Relief.

In conclusion, IT IS ORDERED that the Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

1. Summary judgment is DENIED on the subpart of the Plaintiff's First Claim for Relief for violation of Title VII based on sex harassment.

2. Summary judgment is GRANTED on the subparts of the Plaintiff's First Claim for Relief for violation of Title VII based on sex discrimination, retaliation, failure to promote, and equal pay. Summary judgment shall enter in favor of Public Service Company and against the Plaintiff on the subparts of the Plaintiff's First Claim for Relief for violation of Title VII based on sex discrimination, retaliation, failure to promote, and equal pay.

3. Summary judgment is GRANTED on the Plaintiff's Second Claim for Relief for age discrimination. Summary judgment shall enter in favor of Public Service Company and against the Plaintiff on the Plaintiff's Second Claim for Relief for age discrimination.

4. Summary judgment is GRANTED on the Plaintiff's Third Claim for Relief for breach of contract. Summary judgment shall enter in favor of Public Service Company and against the Plaintiff on the Plaintiff's Third Claim for Relief for breach of contract.

5. Summary judgment is GRANTED on the Plaintiff's Fourth Claim for Relief for promissory estoppel. Summary judgment shall enter in favor of Public Service Company and against the Plaintiff on the Plaintiff's Fourth Claim for Relief for promissory estoppel.