Belinda MARTIN, Plaintiff–Appellant,

v.

NANNIE AND THE NEWBORNS, INC.; Business Solutions, Inc.; Larry D. Gudgel, Defendants–Appellees.

No. 92–6254.

United States Court of Appeals, Tenth Circuit.

Aug. 31, 1993.

Silas C. Wolf, Jr., Norman, OK, for plaintiff/appellant.

Melvin C. Hall of Chapel, Riggs, Abney, Neal & Turpin, Oklahoma City, OK, for defendants/appellees Nannie and the Newborns, Inc. and Larry Gudgel.

Before EBEL and KELLY, Circuit Judges, and BARRETT, Senior Circuit Judge.

EBEL, Circuit Judge.

This case comes before us on appeal of the district court's order granting summary judgment in favor of the defendants. We find that the district court properly granted summary judgment on the plaintiff's quid pro quo harassment claims. However, we find that summary judgment was inappropriate on the harassment claim concerning a hostile work environment and accordingly remand for trial.

*Facts*[1]

Beginning on September 1, 1988, Belinda Martin was employed by the defendant Larry Gudgel and served in various capacities in companies that Gudgel owned, including: People Leasing Co., defendant Business Solutions, Inc., and defendant Nannie and the Newborns, Inc.

Throughout her employment Martin was the target of inappropriate behavior. In the Summer of 1988, Gudgel asked Martin to accompany him to a convention in Colorado. She agreed but made it clear that as a condition to her attending the conference, she must have her own hotel room. When they arrived at the convention, she was told that the hotel did not have a separate room and she was forced to share a suite with Gudgel.

In October of 1988, while at another convention in Tulsa, Oklahoma, Martin was propositioned for sex by one of Gudgel's clients which she refused. The next day Gudgel came to Martin's hotel room and she told him about the incident. Gudgel scolded her and told her that having sex with the client would not have hurt anything and that

---

1. When reviewing a motion for summary judgment we review the facts in the light most favorable to the non-moving party. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991).

no one would have known. In the course of their conversation, Gudgel propositioned Martin for sex. She refused and an argument ensued. Gudgel then raped Martin. She did not report this incident to anyone.

In December of 1988, Gudgel drove Martin home from work after they had finished working for the day. Gudgel went into Martin's house, placed his hands on her shoulder and requested that she accompany him to Lawton, Oklahoma, for the night. She refused, saying that she did not mess around with people with whom she worked. He explained that "he was the owner and not [her] supervisor there was nothing [she] could do." EEOC Affidavit at 2.

In May of 1990, Gudgel inquired of Martin whether she had informed anyone of the rape that had occurred in October of 1988. Martin informed Gudgel that she had told no one. At the same time Gudgel asked Martin out on a date, which she refused. Martin felt intimidated during these exchanges.

In addition to Gudgel, several of Gudgel's employees also harassed Martin. Beginning in February of 1989, and continuing thereafter, Martin was harassed by her supervisor, Lonnie Rothner. On one occasion, when picking Martin up at her house, Rothner showed her some lingerie and offered it to her if she would model it. Martin refused. During a drive to a convention in Tulsa, Rothner waived an artificial penis at Martin and placed it in his belt in front of her. Finally, while at the same convention, Rothner obtained a key to Martin's hotel room from the front desk, entered without her permission, and solicited sex which Martin declined.

In July of 1989, Martin was promoted to an officer of one of Gudgel's companies, Nannie and the Newborns (N & N). While an officer of N & N, Martin was subjected to

repeated sexual innuendoes and embarrassing remarks from one of her co-employees, Max Clark. These remarks continued as long as she was employed there.

On May 18, 1990, Martin was fired from her position at N & N by Jerry Lassiter, the General Manager. The reasons given for her termination were that Martin had asked the bookkeeper to withhold information about certain financial agreements from the owner,[2] and that she failed to complete assignments when requested.

On August 20, 1990, Martin filed a charge of discrimination with the Oklahoma Human Rights Commission alleging that Gudgel intimidated and sexually harassed her. She also charged that Gudgel fired her because he was afraid that she would tell other employees about his actions. On August 20, 1990, Martin also filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"). Although the EEOC did not complete an investigation, it ultimately issued a right-to-sue letter.

The instant action was filed on April 19, 1991. Martin alleges that she was sexually harassed in violation of Title VII, 42 U.S.C. § 2000 et seq., and in pendent state law claims that she was wrongfully terminated, that she was the victim of the intentional infliction of emotional distress, and that she relied on material misrepresentations made by Gudgel. The district court granted the defendants' motion for summary judgment on May 5, 1992. The court found that the plaintiff's Title VII claims were time barred, that she failed to allege sufficient evidence of sexual harassment, and that she failed to offer evidence that might rebut the legitimate, nondiscriminatory reasons for the termination offered by the defendants. Judgment was entered on June 12, 1992.[3] This appeal followed.

---

**2.** The defendants assert that Martin asked the bookkeeper to conceal an arrangement from Gudgel whereby she had agreed to reimburse a client for alleged overcharging. The defendants also assert that Martin requested that the bookkeeper record one of N & N's employee's wages in such a way that the employee could continue collecting unemployment compensation from the government while receiving his paycheck.

**3.** In its judgment of June 12, 1992, the court: (i) entered judgment against Business Solutions, Inc. on default pursuant to the plaintiff's claim of intentional infliction of emotional distress; (ii) entered judgment against the plaintiff on her Title VII claims; and dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(3), the plaintiff's pendent state claims against Nannie & The Newborns, Inc. and Larry Gudgel. It does

*Standard of Review*

 We review summary judgment orders de novo, using the same standards applied by the district court. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

*Discussion*

 The plaintiff-appellant, Belinda Martin, appeals from the order of the district court granting summary judgment to the defendants on her federal claims. In her complaint, Martin alleges that she was the victim of sexual harassment in violation of Title VII. Sexual harassment under Title VII can be shown under one of two principle theories: quid pro quo discrimination or hostile work environment. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987).

The district court found that the plaintiff in the instant case failed to establish a claim of sexual harassment under either quid pro quo or hostile environment theories. The court concluded that Martin's claims were time barred because most of the incidents of harassment occurred outside of the 300 days prior to her filing a complaint with the EEOC. Those incidents that did occur within the 300 day limit were found to be insufficient, as a matter of law, to establish a claim of harassment. The court found that there was insufficient evidence of quid pro quo harassment and that the plaintiff failed to rebut the legitimate reasons for the termination proffered by the defendants. According to the district court, the evidence of hostile environment was also insufficient because it lacked specificity.

*A. Time Bar*

 The primary reason asserted by the district court for granting the defendants' motion for summary judgment was that the plaintiff's claims were time barred. The district court held that "[t]he acts of harassment that plaintiff alleges either all occurred more than 300 days prior to her filing with the EEOC or are insufficient to establish a claim of sexual harassment." Order at 2–3. According to 42 U.S.C. § 2000e–5(e), a charge of discrimination must be filed within 300 days after the alleged unlawful practice occurs.[4] This filing is a prerequisite to a civil suit under Title VII. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

The plaintiff admits that many of the alleged acts of harassment occurred outside the time limit imposed by Title VII including: the lingerie, artificial penis, and hotel room entry incidents as well as the rape. Br. in Opposition to Summ. Judgment at 6. If

---

not appear that Martin is seeking any relief against Business Solutions, Inc. on this appeal.

4. The 300 day limitation applies in those states that have statutorily prohibited sexual discrimination. Otherwise the limit is 180 days. 42 U.S.C. § 2000e–5(e).

these incidents alone constituted the basis of Martin's claim, the action would be time barred. However, Martin also alleges other incidents of harassment which clearly occurred within the 300 day time frame. These included offensive comments by Clark, her termination, as well as Gudgel's questioning concerning the rape at the same time that he asked Martin for a date. She alleges that these incidents, when viewed together with those incidents that occurred outside the time limitation, represent a continuing pattern of discrimination.

█ In *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537 (10th Cir.1987), this court recognized the continuing course of conduct doctrine in the context of an analogous claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. Under that doctrine, a claim of discrimination may include challenges to incidents which occurred outside the statutory time limitations of Title VII if the various acts constitute a "continuing pattern of discrimination." *Furr,* 824 F.2d at 1543. *Allen v. Denver Pub. Sch. Bd.,* 928 F.2d 978, 984 (10th Cir. 1991), applied the continuing course of conduct doctrine to a Title VII claim. There must, however, be at least one instance of the discriminatory practice within the filing period for the doctrine to apply, and the earlier acts must be part of a continuing policy or practice that includes the act or acts within the statutory period. *Furr,* 824 F.2d at 1543.[5] It is not sufficient merely that acts outside the required time limit had a continuing *effect* within the statutory time allowed for suit.

█ In determining whether the prior incidents of discrimination constitute a continuing course of discrimination or whether they are discrete unrelated acts, we have adopted the approach taken by the Fifth Circuit in *Berry v. Board of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981 (5th Cir.1983), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986) and *Waltman v. International Paper Co.,* 875 F.2d 468, 474–75 (5th Cir.1989). *Purrington v. University of Utah,* 996 F.2d 1025 (10th Cir.1993). In *Berry,* the court set forth several nonexclusive considerations relevant to the continuing violation question including: (i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.[6]

█ Examining the plaintiff's allegations in light of the *Berry* factors, we conclude that the plaintiff has introduced sufficient facts to raise a triable issue on whether Gudgel and his companies engaged in a continuing course of discrimination such that the district court should consider the incidents that occurred prior to the 300 day time limitation. First, all the incidents alleged by the plaintiff involved sexual harassment. Second, the incidents are alleged to have occurred consistently and frequently over the course of her employment. Martin's complaint asserts that she was harassed from the beginning of her employment until she was fired and her deposition describes a fairly continuing pattern of sexual harassment. She claims that

---

5. The appellees have argued before us that the continuing violation theory should not be applied to allow this court to look to time-barred incidents unless the plaintiff has alleged that incidents occurred within the time limitation that are sufficient, standing alone, to comprise a claim for hostile work environment. In light of the language in *Furr* that only one incident need have occurred within the time limitation, we reject this argument.

6. The continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights

have been violated. *Alldread v. City of Grenada,* 988 F.2d 1425, 1432 (5th Cir.1993). The permanence prong of the *Berry* test limits the reach of the continuing violation theory by restricting its operation to those situations underscored by its equitable foundation. That is, if an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge with the EEOC with respect to that event or series of events. *See Bell v. Chesapeake & Ohio Ry. Co.,* 929 F.2d 220, 223–25 (6th Cir.1991).

her employers allowed an atmosphere of sexual harassment to exist even after they had notice. She also claims that as a result of the harassment, and her rejection of unwelcome sexual advances, she was given unsatisfactory job reviews and was ultimately terminated. Finally, she asserts that the harassment constitutes a "continuous course of conduct." Br. in Opposition to Summ. Judgment at 6. The third factor of permanence is more difficult for Martin. Certainly, some of the events, including the rape, should have been reported at the time they occurred. She allowed this sexual harassment to continue for a long time before she filed a complaint with the EEOC. However, given the analysis under the first two factors, we believe that Martin has shown enough to avoid summary judgment on the statute of limitations issue. The district court will, of course, be free to evaluate these factors in light of the evidence as it develops at trial.

■ Having found that Martin provided sufficient facts to demonstrate that there is a genuine issue of material fact concerning the existence of a continuing violation, for purposes of summary judgment we must now proceed to determine whether all the incidents alleged, including those within and outside of the limitations period, are sufficient to establish a case of sexual harassment under either the quid pro quo or hostile work environment theories. *See Estate of Pitre v. Western Elec. Co.*, 975 F.2d 700, 705 (10th

Cir.1992); *Allen*, 928 F.2d at 984; *Furr*, 824 F.2d at 1543.[7]

### B. *Quid Pro Quo Discrimination*

■ To prevail on a quid pro quo discrimination claim, the plaintiff must show that concrete employment benefits were conditioned on submission to sexual conduct. *Hicks*, 833 F.2d at 1413. The district court found that the plaintiff failed to present any evidence that her "employment was conditioned on granting sexual favors to Gudgel." Order at 3. It also found that the plaintiff "presented no facts in rebuttal of defendants' evidence that plaintiff's poor job performance, rather than Gudgel's advances explained her termination." *Id.* We agree.

The record is devoid of any evidence that Martin's employment was conditioned on granting sexual favors to Gudgel or to any of her supervisors or coemployees. In her submissions to this court, the plaintiff is unable to direct our attention to any examples of any such conditions occurring either within or outside of the time limitations imposed under Title VII. Instead, she relies only on her general conclusory allegations that she was terminated because of her refusal to submit to Gudgel's advances and her complaints about his behavior. Thus, Martin's quid pro quo claim is one for wrongful termination.

■ The Supreme Court has established, and this circuit has repeatedly adopted, a three-part test to determine

---

**7.** Although not raised by either party, we also consider whether the plaintiff's EEOC complaint is sufficient to preserve all the issues raised in her suit. As a general rule, where charges are not brought before the EEOC, federal courts are without jurisdiction to hear them. *Butts v. City of New York Dep't of Hous.*, 990 F.2d 1397, 1401 (2d Cir.1993); *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir.1976). In the instant case, the plaintiff's complaints to the EEOC and the Oklahoma Human Rights Commission only involved harassment and termination by Gudgel. She did not object to harassment by either Clark or Rothner.

Despite the plaintiff's failure to object to harassment by individuals other than Gudgel, we find we are not divorced of jurisdiction to consider the full range of her complaints. Martin does not allege that Clark and Rothner harassed her as part of an independent count. She did not seek personal liability against either Clark or

Rothner; in fact they are not parties to this suit. Rather, she alleged their harassment as a means to show that the defendant corporations and Gudgel, as the owner of these corporations, had a policy of tolerating and accepting harassment. Further, we find we have jurisdiction under the standards established by our sister circuits that have considered this issue. According to the First, Second, and Fourth Circuits, consideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made. *Powers v. Grinnell Corp.*, 915 F.2d 34, 38–39 (1st Cir.1990); *Butts*, 990 F.2d at 1402; *King*, 538 F.2d at 583. We conclude that the harassment by Clark and Rothner could reasonably have been expected to come to light in the scope of the investigation of the complaint filed by Martin.

whether the plaintiff has established a prima facie case under Title VII for a wrongful termination claim. Initially, the plaintiff must show that (i) she belongs to a protected class; (ii) she was qualified and satisfactorily performing her job; and (iii) she was terminated under circumstances giving rise to an inference of discrimination. *See Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 985 (10th Cir.1991); *McAlester v. United Air Lines*, 851 F.2d 1249, 1260 (10th Cir.1988); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). Once the plaintiff meets this burden, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the decision which adversely affected the employee. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the defendant has set forth a facially nondiscriminatory reason for the decision, the "factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095. The plaintiff assumes the burden to prove that the employment decision was the result of intentional discrimination based on an impermissible motive. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff can prevail either directly by proving that the employer acted with a discriminatory motive or indirectly by showing that the stated reason for the discharge was a "pretext for the sort of discrimination prohibited by [Title VII]." *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, —— n. 6, 113 S.Ct. 2742, 2752 n. 6, 125 L.Ed.2d 407 (1993) (*quoting McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at

1825); *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316–17 (10th Cir.1992).

In this case, the district court found that the plaintiff failed to establish a prima facie case because she did not present any evidence that she was fired because she refused to submit to the sexual demands of Gudgel or his employees. As an alternate rationale for its holding, the court found that the plaintiff failed to rebut the defendants' legitimate nondiscriminatory reasons for her termination.[8]

In response to the initial complaint, the defendants proffered two reasons for Martin's termination: that she had attempted to conceal information about financial dealings from Gudgel, and that she failed to complete assignments when requested. To support these justifications, the defendants submitted the separation notice used when Martin was terminated as well as affidavits from a co-worker and the company bookkeeper.[9] In response, Martin submitted her own affidavit in which she asserted

> The alleged basis for my termination was a pretext as I knew the allged [sic] basis was untrue, but was procedurally in keeping with the method Mr. Gudgel employed to rid himself of employees which might present him with legal problems.

We agree with the district court that Martin's conclusory statements concerning the validity of the defendants' justifications are inadequate to overcome summary judgment. At this stage of the analysis, we are charged to determine "whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff."

---

8. The district court seems to have relied on the plaintiff's failure to rebut the reasons given for her termination as an alternative holding in dismissing both the quid pro quo and hostile environment claims. However, we find that reasoning to be relevant only to Martin's quid pro quo termination claim.

9. More precisely, the defendants submitted three documents to support their reason for terminating Martin. First, the defendants submitted an affidavit from Norma Dery, who apparently was an accountant with N & N, in which she claims that Martin attempted to (i) conceal, from the owner Gudgel, financial dealings involving rebates to customers, and (ii) to avoid reporting

earnings for an employee so that the employee could continue to receive unemployment. Second, the defendants offered two affidavits from Joycelyn Lunday that established that Martin would, among other things, (i) have others lie about her whereabouts; (ii) improperly advance money to employees; (iii) promote a personal business, selling insurance, while at work; and (iv) would fail to complete tasks assigned by her superiors. Third, the defendants pointed to the notice of dismissal, which explains that she was dismissed because of withholding information from the owner, and failing to complete assigned tasks.

*MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1121–22 (10th Cir.1991) (citations and quotations omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 249, 106 S.Ct. 2505, 2510, 2510–11, 91 L.Ed.2d 202 (1986). In the face of the strong and detailed evidence presented by the defendants, Martin is unable to provide anything but her own unsupported assertion that the reasons given for her termination are a pretext for sexual discrimination.[10] Conclusory statements are insufficient to defeat a motion for summary judgment. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989); *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983); *DiIulio v. Board of Fire & Police Comm'rs*, 682 F.2d 666, 671 (7th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982); *Thornhill Publishing Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 738–39 (9th Cir.1979). We find that Martin has failed to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the district court properly granted summary judgment to the defendants on the quid pro quo harassment claim.

**C. Hostile Work Environment**

■ To prevail under a hostile work environment theory, the plaintiff must show that sexual conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Vinson*, 477 U.S. at 65, 106 S.Ct. at 2404–05 (*quoting* 29 C.F.R. § 1604.11(a)(3) (1986)). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Vinson*, 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

■ The district court considered the incidents involving Clark and Gudgel that occurred within the time limitation and concluded that they were insufficient to support a hostile environment claim. Because we find that the plaintiff put forward sufficient facts to establish a genuine dispute as to whether the earlier incidents should be considered part of a continuing violation, we conclude that the district court improperly limited its consideration to those incidents that occurred within the time limitation.[11] Further, we conclude that the court improperly discounted those incidents involving Clark and Gudgel that occurred within the limitation period.[12] We acknowledge that the

---

10. Martin also attempts to show that the proffered reasons were pretextual by relying on the deposition testimony of two of her fellow employees, Lonnie Rothner and Max Eldon Clark, who impeach Gudgel's credibility. However, we are unpersuaded by this evidence. First, Jerry Lassiter fired Martin and filled out the separation notice giving the reasons for the termination. Neither Rothner nor Clark question Lassiter's credibility. Second, this evidence does not impeach the credibility of either of the affiants who the defendants present as supporting their reasons for the termination. Nor does it imply that the reasons given were a pretext *for a discriminatory motive*. *See E.E.O.C. v. Flasher Co.*, 986 F.2d 1312 (10th Cir.1992).

11. Feeling itself bound by the statutory limitation which requires a complaint to be filed with the EEOC within 300 days of an incident, the district court declined to consider: the incident when Martin was forced to share a room with Gudgel at the Colorado convention, the rape, the incident at Martin's home when Gudgel propositioned and touched her, Gudgel touching Mar-

tin's stomach in front of her co-workers, Rothner's comments about the lingerie, the artificial penis incident, and the episode where Rothner entered Martin's hotel room without permission and propositioned her.

12. The court found that "Gudgel's remarks in 1990 do not rise to a level sufficient to support a hostile environment claim." Order at 4. We disagree. Martin alleges that in 1990, Gudgel asked her if she had told anyone about the fact that he had raped her. In the same conversation, Gudgel also asked Martin out on a date. Martin has attested to the fact that she was intimidated by this episode, and given the traumatic nature of rape we hardly think this reaction can be questioned.

The district court also found that the plaintiff could not rely on the comments made by Max Clark to establish a hostile environment claim because she "could point to no specific remark or any specific conduct by Clark that she found offensive, even though she was repeatedly given

defendants dispute much of Martin's testimony and they have submitted evidence that painted a different picture. But, that is what trials are all about. We find that the plaintiff has put forward sufficient facts to demonstrate that there is a genuine issue of material fact regarding the existence of a hostile work environment. As such, we find that summary judgment on this issue was inappropriate.

For the foregoing reasons the judgment of the district court is VACATED in part and the case is REMANDED for trial on the plaintiff's hostile environment claim.

the opportunity to do so." *Id.* We also disagree with this conclusion. While it is true that Martin failed to recall the specific words used by Clark, she did testify at her deposition that "[h]e would do things—like, if I bent over maybe in my office to pick up something and he walked by he would just make accusations to the point that maybe, well, bending over like that anything could be, you know, stuck up me or something like that." Martin Depo. at 16. We find this recollection to be sufficiently specific, and the comment to be sufficiently harassing that it could support a hostile environment claim. This is especially true in light of the testimony of Martin's co-workers. Clark admitted that he would regularly make sexual comments to Martin. Clark Depo at 33–35. Rothner verified that remarks were often made to Martin. Rothner Depo. at 34.

The district court also discredited Martin's allegations about Clark's remarks because Martin testified that she generally ignored them. Martin Depo. at 19. However, we do not feel that Martin's typical reaction to Clark's comments necessarily means that she did not find them offensive. Martin was offended enough to complain to Clark's supervisor, Pat Jennings. Martin Depo. at 25. Her testimony is corroborated by Rothner's testimony that Jennings approached him about instructing Clark to "take it easy" on Martin. Rothner Depo. at 34.