Daniel R. **BERNARD**, Plaintiff,

v.

**DOSKOCIL COMPANIES, INC., Defendant.**

Civ. A. No. 92–1644–MLB.

United States District Court, D. Kansas.

Aug. 26, 1994.

Frederick C. Davis, II, Bruce & Davis, Wichita, KS, for plaintiff.

W. Stanley Churchill, Ross A. Hollander, Martin, Churchill, Overman, Hill & Cole, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant's second motion for partial summary judgment (Doc. 68). The facts of the case were previously set forth in the court's order concerning defendant's first motion for partial summary judgment (Doc. 84, pp. 3–7). Additional pertinent facts will be reviewed as necessary.

In its first motion for summary judgment, defendant sought judgment as a matter of law on the second, third, fourth, fifth and sixth causes of action in plaintiff's complaint. The motion was granted as to causes of action 2 through 5 and denied as to the sixth cause of action for intentional infliction of emotional distress. In its second motion, defendant seeks summary judgment on plaintiff's first cause of action, which alleges racial discrimination and seeks recovery under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

### SUMMARY JUDGMENT STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202

(1986); *see Prenalta Corp. v. Colorado Inter-state Gas Co.,* 944 F.2d 677, 684 (10th Cir. 1991).

■ The burden of proof at the summary judgment stage is similar to that at trial. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion, *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993), and the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial," *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). The court views the evidence in a light most favorable to the non-moving party. *See, e.g., Thrasher v. B & B Chemical Co., Inc.,* 2 F.3d 995, 996 (10th Cir.1993).

*Plaintiff's Cause of Action under Title VII*

In his "first cause of action," plaintiff essentially sets forth a claim for racial discrimination predicated on allegations of racial harassment. Plaintiff alleges that "defendant discriminated against [him] with respect to the terms, conditions, and privileges of his employment because of plaintiff's race and color, in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)." (Doc. 1, ¶ 10). According to plaintiff, these "differential terms and conditions of employment included" (1) racial harassment and (2) his termination. *Id.* at ¶ 18. Plaintiff specifically lists a number of alleged incidents of racial harassment, *id.* at ¶¶ 11–17, including defendant's denying him a raise in July 1991, *id.* at ¶ 15. Plaintiff claims that such harassing conduct was "not experienced by whites similarly situated." *Id.* at ¶ 18. According to plaintiff, the hostility aimed at him because of his race became so intolerable that continued employment with defendant was impossible. *Id.* at ¶ 10.

Defendant contends it is entitled to summary judgment on plaintiff's racial harassment claim. In addition, defendant seeks summary judgment on two other types of Title VII claims plaintiff has seemingly raised in his complaint: discriminatory discharge and pay discrimination. Initially, the court will address defendant's concerns regarding a claim of pay discrimination.

■ As stated *supra,* plaintiff's complaint includes an allegation that he was denied a pay raise in July 1991. From this, defendant has apparently discerned a possible pay discrimination claim. However, plaintiff's complaint clearly does not state such a claim. Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a)(1), specifically prohibits discrimination "with respect to [an employee's] **compensation,** terms, conditions, or privileges of employment." (emphasis added). In his "first cause of action," however, plaintiff does not list "compensation" as a basis for his Title VII claim. Rather, plaintiff simply includes an allegation that he was denied a pay raise given to other employees among those allegations supporting his claim of racial harassment. Indeed, in his response to defendant's second motion for partial summary judgment, plaintiff maintains that his allegation concerning defendant's failure to grant a pay raise is merely "part and parcel to his overall race discrimination and harassment argument"—that the denial of a pay raise is a "predicate act (among several other predicate acts) establishing [the existence of] a racially hostile work environment." (Doc. 82, pp. 33–36). Accordingly, the court finds that no separate claim of pay discrimination has been made and, therefore, defendant's motion for summary judgment on such a claim is moot.

Turning to plaintiff's racial harassment claim, both parties agree that the starting point for evaluating such a claim is the Supreme Court's decision in *Harris v. Fork Lift Systems,* — U.S. —, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In that case, a female employee alleged that her male supervisor had engaged in sexually harassing conduct to such an extent as to create an "abusive" or "hostile" work environment in violation of Title VII. *Id.* — U.S. at —, 114 S.Ct. at 369. The district court held plaintiff's supervisor's conduct did not create an abusive environment because it did not " 'seriously affect [plaintiff's] psychological well-being.' " *Id.* — U.S. at —, 114 S.Ct. at 370. The Sixth Circuit affirmed, and the Supreme Court granted certiorari to consider whether

proof of a serious psychological affect is necessary to establish the existence of an abusive or hostile work environment under Title VII. *Id.*

Looking to its decision in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court noted that the phrase "terms, conditions, or privileges of employment" in Title VII encompasses a prohibition on "requiring people to work in a discriminatorily hostile or abusive environment." *Id.*

> When the workplace is permeated with "discriminatory intimidation, ridicule,. and insult," . . . that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," . . ., Title VII is violated.

*Id.* (quoting *Meritor*, 477 U.S. at 65, 67, 106 S.Ct. at 2405). The Court further noted that evidence of a hostile work environment must satisfy both subjective and objective standards, revealing an environment that the plaintiff actually and reasonably ·perceived to be abusive. *Id.* The Court found that this did not require the plaintiff to submit evidence of a serious psychological injury:

> Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, *Meritor, supra,* 477 U.S., at 67, 106 S.Ct., at 2405, there is no need for it also to be psychologically injurious.

*Id.* —— U.S. at ——, 114 S.Ct. at 371. The Court held that, ultimately, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circum-. stances," which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

▮ Applying *Harris* and *Meritor Savings* to the present case, the court finds that plaintiff has presented sufficient evidence of a racially hostile work environment to over-come defendant's motion for summary judg-ment. Plaintiff has pointed to the following alleged incidents of harassing conduct, most of which were discussed in the court's previous order, in support of his racial harassment claim: (1) Marcus Pousson, plaintiff's assistant foreman, calling him a "black boy"; (2) Pousson's stating in front of others that "we don't allow your kind at the water fountain"; (3) an employee in the research and development department using the term "nigger rig"; (4) co-workers telling racial jokes; (5) co-workers changing the dial settings on plaintiff's arc welder while he was away from his work station; (6) co-workers sneaking up and banging hammers on plaintiff's work table; (7) Arley Philbrick, plaintiff's leadman, threatening to wrap a rag saturated with lacquer thinner around plaintiff's neck while plaintiff was welding; (8) an unidentified co-worker placing a tungsten welding tip in plaintiff's chair which punctured his buttocks; (9) being denied a raise; and (10) the simple fact that plaintiff was singled out as Reno Technology's only black employee. "[L]ooking at all the circumstances," these allegations are sufficient, for purposes of summary judgment, to demonstrate a racially hostile work environment. *Harris,* —— U.S. at ——, 114 S.Ct. at 371. They reveal relatively frequent and sometimes severe harassing conduct, including physical threats and actions which interfered with plaintiff's performance of his job. *Id.* Viewing the allegations and evidence that supports them in a light most favorable to plaintiff, summary judgment is manifestly inappropriate.

As defendant points out, the veracity and probative value of a number of plaintiff's allegations can be called into question. For example, plaintiff admits not hearing any racially derogatory jokes or Pousson's alleged "black boy" comment; he concedes the alleged reference to the term "nigger rig" was not directed at ˙ him; and he does not controvert defendant's representation that he was hired ·at an hourly rate equal to that of a welder with two years of experience. (The court identified some of these and other shortfalls in its previous order, specifically, in the section regarding intentional infliction of emotional distress). However, who to believe and what weight certain evidence

should be given are not matters this court can appropriately decide at the present time. To do so would be to exceed the boundaries of summary judgment and encroach upon the province of the finder of fact.[1]

Defendant contends that the court should consider separately those allegations involving "behavior commonplace in the 'blue collar environment' from that conduct motivated by a racial animus" in evaluating plaintiff's evidence supporting his racial harassment claim. (Doc. 69, p. 15). Defendant argues that most of the conduct alleged by plaintiff is merely innocuous "horseplay" and should not be characterized as evidence of racial hostility. As support for this proposition, defendant relies on Judge Rogers's decision in *Bolden v. PRC, Inc.*, CIV. A. No. 90–4160–R, 1993 WL 245128 (D.Kan. June 11, 1993).

In *Bolden*, a black male (Bolden) alleged that his working environment was racially hostile because co-workers made crude, derogatory remarks (some of them racial in nature), occasional racial jokes (though none were told in his presence), and, on two occasions, farted ("expelled flatulence"), while in his presence. *Id.* at *2. Unlike the present case, Bolden never reported any of the alleged racial comments to any supervisor or manager at PRC. *Id.* When he did tell one supervisor about being called an "asshole," PRC "effectively handled" the situation. *Id.* Bolden eventually filed a complaint with the Kansas Commission on Civil Rights (KCCR), and, after a settlement conference, PRC took additional corrective action. *Id.* at *3.

In analyzing this evidence under the standards set forth in *Meritor Savings*, Judge Rogers noted that there were "only a few incidents where co-workers made racial slurs or racial comments or told racial jokes." *Id.* at *4. He found that "[t]he other incidents noted by plaintiff were apparently commonplace [in] the blue collar environment of the electronics shop at PRC" and that there was **"no evidence that any of these incidents were racially motivated** ... since plaintiff admit[ted] that other employees were sub-

jected to the same crude, rude and boorish behavior." *Id.* (emphasis added). Judge Rogers further found that Bolden had admitted "that his direct supervisor was unaware of any of the racial slurs, comments or jokes" and "that PRC responded effectively to his complaints concerning the other matters." *Id.* at *5. Based on these findings, Judge Rogers concluded that Bolden had not presented sufficient evidence of a hostile working environment or sufficient evidence that, if a hostile environment did exist, PRC should be held liable. *Id.* at *4–5.

There are at least two significant distinctions between *Bolden* and the present case. First, in the present case, as noted *supra*, it is undisputed that plaintiff's supervisors were well aware of many of the alleged incidents of harassment. At least one of the incidents that was discussed, Mr. Pousson's water fountain comment, involved possible racial hostility.

Second, and more importantly given the grounds upon which defendant is seeking summary judgment, there is evidence in the present case suggesting a "racial motivation" behind some of the so-called blue collar "horseplay" that went on at Reno Technology. Unlike Bolden, the plaintiff in this case appears to have been subjected to a quantitatively and qualitatively greater level of harassment than his co-workers. While horseplay, pranks, and foul language may be commonplace at Reno (many of the Reno employees deposed indicated that it is), the horseplay, pranks, and language directed at plaintiff appear to have been uniquely mean-spirited and numerous. The reason for this is, of course, not entirely clear. But **the fact that plaintiff was the only black employee** certainly suggests to this court that the motivating reason was plaintiff's race. Defendant does not directly counter this suggestion (i.e., by positively stating that the motivation behind the horseplay, pranks, and comments was not plaintiff's race), and it is rather disingenuous for defendant to do so indirectly by trying to make this case look like

---

1. Because the court denied summary judgment with respect to plaintiff's claim for intentional infliction of emotional distress, and plaintiff has demanded a jury trial, a jury will be necessary in this case. The jury will give an advisory verdict on plaintiff's Title VII claims. The ultimate decision on Title VII will, however, rest with the court.

*Bolden.* Plaintiff has set forth sufficient evidence and deserves the opportunity to prove that the harassment directed at him was racially motivated and that it rose to such a level as to "alter the conditions of [his] employment and create an abusive working environment." *Meritor Savings,* 477 U.S. at 67, 106 S.Ct. at 2405.

Finally, defendant also seeks summary judgment on plaintiff's Title VII claim to the extent it is based on allegations of discriminatory discharge. Looking to the familiar Title VII prima facie "framework" developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and clarified in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), defendant contends that there is no evidence that its proffered legitimate, nondiscriminatory reason for plaintiff's discharge—the work restrictions prescribed by Dr. Hanson—was merely a pretext for racial discrimination.

In response to defendant's pretext argument, plaintiff points out that his discriminatory discharge claim is intertwined with his allegations of racial harassment. Plaintiff claims that he was discharged because it was easier for Reno Technology to fire him than to try to rectify its hostile and abusive work environment. Furthermore, plaintiff points to Dr. Eyster's letter (referred to in the court's previous order) and numerous deposition excerpts which he contends establish that he could have performed the duties of a welder at Reno Technology even after the puncture wound to his buttocks. Plaintiff observes that it would be "truly ironic" for his buttocks injury, resulting from racial harassment, to deprive him of his discriminatory discharge claim under Title VII.

 Having thoroughly reviewed the arguments and evidence of both parties, the court finds sufficient evidence of pretext. Under *St. Mary's Honor Center,* an employer's proffered legitimate, nondiscriminatory reason for its employment decision "cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." —— U.S. at ——, 113 S.Ct. at 2752 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94). Hence, in this case, there are two elements to refuting defendant's explanation that it fired plaintiff because of Dr. Hanson's work restrictions: (1) presenting evidence that this explanation is unworthy of credence; and (2) presenting evidence that the real reason for discharge was plaintiff's race. Plaintiff has satisfied element (1) by pointing to his supervisor's knowledge of the letter from Dr. Eyster and deposition testimony suggesting that he was still qualified to be a welder. (See Doc. 82, pp. 26–32). Plaintiff has satisfied element (2) by pointing to the connection between the alleged racial harassment and his discharge—that is, by setting forth evidence that the real reason for his discharge was defendant's unwillingness to correct its racially hostile work environment. (See Doc. 82, pp. 32–33).

**IT IS ACCORDINGLY ORDERED** that defendant's second motion for partial summary judgment (Doc. 68) is hereby denied. The court's direction in its previous order with respect to a motion for reconsideration applies equally to this order.

Counsel shall submit a pretrial order by September 9, 1994.