William C. KELVER,
Plaintiff/Counterclaim Defendant,

v.

UNITED STATES of America,
Defendant/Counterclaimant.

No. CIV. A. 94–WM–614.

United States District Court.
D. Colorado.

Nov. 18, 1997.

Ellis J. Sobol, Denver, CO, Lawrence E. Gustafson, Baum and Gustafson, P.C., Denver, CO, for Plaintiff/Counterclaim Defendant.

Susan A. Berson, Senior Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant/Counterclaimant.

## MEMORANDUM OPINION AND ORDER

MILLER, District Judge.

This matter is before me on the government's motion for summary judgment. For the reasons set forth below, the motion is granted.

### Background

William Kelver and Richard Lotz were the officers, directors and shareholders of Media Acquisitions, Inc. ("MA") throughout its entire existence. Mr. Kelver owned 48% of MA's stock. Mr. Lotz owned 49% of the company's stock. The remaining 3% of the stock was never issued. Mr. Kelver, Mr. Lotz and an attorney who had handled the incorporation of MA constituted the board of directors. Mr. Kelver served as MA's vice president and secretary, and performed purchasing and inventory control duties for the corporation. Mr. Lotz was the president and the treasurer. MA ceased its operations in late 1991, due to financial insolvency.

MA never paid to the Internal Revenue Service ("IRS") federal income and Federal Insurance Contributions Act ("FICA") taxes that were withheld from MA employees' wages for the quarters ending September 30, 1990, December 31, 1990, March 31, 1991, June 30, 1991, September 30, 1991, and December 31, 1991. Lotz was directly responsible for seeing that the withholdings were paid, but Kelver also knew they had not been. He claimed he relied on Lotz's assurances they would be, but he failed to verify whether the taxes were paid. Meanwhile, both Kelver and Lotz continued paying salaries to themselves.

The IRS notified Messrs. Kelver and Lotz that it found each of them responsible for MA's failure to pay over the withheld taxes and that they each were being charged a penalty of $23,080.91 pursuant to 26 U.S.C. § 6672.[1]

Mr. Kelver paid the outstanding withholding tax of one employee of MA for the third quarter of 1991 and filed a claim for a refund with the IRS, which the IRS ultimately denied. Mr. Kelver filed this action seeking judgment for the $100 paid under protest and an adjudication of his liability for the unpaid withholding taxes. Defendant filed

---

1. Each taxpayer was initially assessed a penalty of $32,958.36, but the IRS reduced Mr. Kelver's to $23,080.91 while he was pursuing administrative appeal of the penalty. The IRS has agreed to reduce Mr. Lotz's penalty to $23,080.91 in order to eliminate a possible issue that the amount of the penalty is not an accurate.

its Answer and Counterclaim pursuant to 26 U.S.C. § 7401 to reduce to judgment the outstanding balance due on the assessments against Messrs. Kelver and Lotz. Now, defendant moves for summary judgment against Messrs. Kelver and Lotz for the unpaid assessments and dismissal of Mr. Kelver's complaint with prejudice. Specifically, the government asserts that Messrs. Kelver and Lotz were responsible parties who willfully failed to collect and turn over MA's withholding taxes under 26 U.S.C. § 6672. A stipulated judgment has already been entered against Mr. Lotz in the amount of $23,080.91. Thus, defendant's motion for summary judgment now concerns only the claims between Mr. Kelver and defendant.

### Standard of Review

Summary Judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of any issue of material fact. If that burden is met, the opponent has a burden of presenting specific facts which show that there is a genuine, material issue for trial. In doing so, the opponent "may not rest upon the mere allegations or denials of the adverse party's pleading.... " Fed. R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410 (10th Cir.1993). Ultimately, summary judgment is improper if, viewing the facts before the court in a light most favorable to the non-moving party and drawing all reasonable inferences in favor of that party, a reasonable jury could find in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### Analysis

#### A. Statutory Background

It is helpful to have an overview of the federal withholding tax scheme to understand the nature of 26 U.S.C. § 6672:

> The internal revenue code requires employers to withhold federal social security and income taxes from their employees' wages as those wages are paid. Because the employer is only required to pay over

the taxes quarterly, the accumulated withholdings are deemed to constitute a special fund in trust for the United States. Once an employer withholds taxes from an employee's wages, the withholdings are credited to the employee regardless of whether they are paid over to the government; therefore, the IRS has recourse only against the employer for their payment. One of the IRS's most effective tools for ensuring that it receives withheld trust-fund taxes is 26 U.S.C. § 6672, which creates personal liability for persons within an employer's business who are responsible for collecting and paying over the withheld taxes but willfully fail to do so. Section 6672 in part provides:

> (a) General Rule—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully in any manner to evade or defeat such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over.

> Thus, § 6672 imposes liability on a person if: (1) the individual is a person responsible for collecting and paying over trust-fund taxes, and (2) the individual willfully failed to carry out these responsibilities.

*Finley v. United States,* 82 F.3d 966, 970 (10th Cir.1996) (citations and quotations omitted).

#### B. Liability under 26 U.S.C. § 6672

A two-step analysis is used to determine liability for the penalty under § 6672:(1) is the person "responsible" within the meaning of § 6672 and (2) is the failure to collect, account for, and pay over trust-fund taxes "willful." *Finley v. United States,* 82 F.3d at 970–71. The government's *prima facie* is made by introducing the assessment against the taxpayer, who then bears the burden of showing either he was not a responsible person or he did not act willfully. *Id.*

### 1. Responsible Person

■ "Courts generally give a broad interpretation to the term 'responsible person' under section 6672." *Denbo v. United States*, 988 F.2d 1029, 1032 (10th Cir.1993). The Tenth Circuit has recently identified the criteria for determining whether an individual is a "responsible person":

> A corporate officer or employee is responsible if he has significant, though not necessarily exclusive, authority in the general management and fiscal decision making of the corporation. In this circuit, we have set forth a non-exclusive list of factors demonstrating "indicia of responsibility." Specifically, we examine whether the person: (1) held corporate office; (2) controlled financial affairs; (3) had authority to disburse corporate funds; (4) owned stock; and (5) had the ability to hire or fire employees. If an individual possesses sufficient indicia of responsibility, he is a "responsible person" under § 6672 regardless of whether he: (1) has the final say as to which creditors should be paid; or (2) has the specific job within the corporate structure to see that the taxes are paid over to the government. The crucial inquiry is whether the person had the effective power to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed. Liability under § 6672 extends to all responsible corporate officers or employees, not just to the single most responsible individual.

*Taylor v. I.R.S.*, 69 F.3d 411, 416 (10th Cir. 1995) (citations and quotations omitted). *See also Denbo v. United States*, 988 F.2d at 1032 ("[I]t is not necessary that a [responsible] person be the one who prepared the tax returns, kept the books and records, paid the wages or withheld the taxes.").

■ The undisputed facts establish that Mr. Kelver: (a) was an officer of MA; (b) owned 48% of MA's stock; (c) was a cosignatory on MA's corporate bank accounts, and as such had unrestricted access to MA's accounts; (d) signed corporate checks; (e) authorized bank deposits; (f) helped obtain financing for the company; (g) guaranteed corporate loans; (h) made or authorized bank deposits; (i) reviewed, on a monthly basis, MA's financial statements which reflected unpaid withholding taxes; and (j) authorized payroll checks for MA's employees on at least one occasion, while Mr. Lotz was in Hawaii. Hence, Mr. Kelver had the requisite indicia of responsibility to make him a person responsible for the collection or payment of withholding taxes.

Nevertheless, Mr. Kelver asserts that he was not a "responsible person" because he "did not have the final word as to what bills should or should not be paid, and when" and Mr. Lotz had the primary responsibility for paying withholding taxes. However, such distinctions, even when showing others had greater control, does not free the taxpayer from being a "responsible person." The fact that Mr. Kelver had "significant corporate authority" with the power to pay the taxes suffices. *Taylor*, 69 F.3d at 416, *Denbo*, 988 F.2d at 1033.

Therefore, the undisputed facts establish that Mr. Kelver is such a responsible person as a matter of law. *See Arnett v. United States*, 927 F.Supp. 1464, 1471 (D.Kan.1996) (finding an individual who held corporate office, partially controlled financial affairs, had authority to disburse corporate funds, owned one share of stock, and had the ability to hire and fire employees a responsible person); *Taylor*, 69 F.3d at 416–17 (affirming a finding that taxpayer was a responsible person where three of the indicia of responsibility were met); *Denbo*, 988 F.2d at 1032–33 (finding individual responsible where he made arrangements for several bank loans, held regular meetings with accountants, had authority to sign checks—although he never exercised that authority—was a 50% owner of the corporation, and was an officer and director of the corporation).

### 2. Willfulness

■ Failure to pay is "wilful" if a person either:

> [1] ... acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes or

[2] ... acts with a reckless disregard of a known or obvious risk that the trust funds may not be remitted to the government. *Finley,* 82 F.3d at 971.

■■ *Finley* went on to recognize that recklessness, amounting to willfulness, is demonstrated as a matter of law where a responsible person fails to investigate or correct mismanagement after being notified that withholding taxes have not been paid. *Id.* at 972–973. Such notice creates a duty for the responsible person to act by either adequately investigating the failure or by correcting the mismanagement. *Denbo,* 988 F.2d at 1033–34. That duty is not discharged by reliance on the assurances of others that the problem has been or will be corrected. *Id.* Nor is the duty satisfied if the responsible person delegates the task of correcting the mismanagement to "someone who has already proven unreliable and untrustworthy." *Finley,* 82 F.3d at 973.

Once a "responsible person" has had clear notice that the person to whom he has delegated responsibility for paying the taxes has wrongfully failed to pay them in the past, he continues to delegate that responsibility only at his peril. Should the "responsible person" continue to delegate, without taking appropriate measures to assure that the delegated person will not repeat the dereliction in the future, the subsequent willfulness of the delegatee in once more failing to pay the taxes will be imputed to the "responsible person." If after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily.

*Finley,* 82 F.3d at 973 (citations and quotations omitted).

■ Mr. Kelver stated in his deposition that he knew the corporation was in financial straits. In fact, he was aware in July 1991 that MA had unpaid withholding tax liability, but he disclaims responsibility because Mr. Lotz had assured him that he was paying the IRS. However, Mr. Kelver never verified whether Mr. Lotz paid the taxes as promised. A taxpayer cannot put blinders on to avoid liability, particularly where, as here, he continues his own salary or other financial benefit. To so reward studied ignorance would undermine the law and its purposes.

Once Mr. Kelver received actual knowledge in July 1991 that the taxes were not being paid, he had a duty to either investigate or correct the mismanagement. Those duties were not satisfied by his reliance on the verbal assurances of Mr. Lotz who had already manifested his untrustworthiness. *See Arnett,* 927 F.Supp. at 1471; *Denbo,* 988 F.2d at 1033–34. Mr. Kelver's actions were reckless in light of the obvious risk that withheld taxes were not being paid to the government, particularly while continuing his own salary. Therefore, as a matter of law, Mr. Kelver acted willfully.

*Conclusion*

On the basis of the undisputed facts, I conclude that Mr. Kelver was a person responsible for collecting and paying over trust-fund taxes and he willfully failed to do so. Therefore, Mr. Kelver is liable for the penalty assessed pursuant to 26 U.S.C. § 6672.

Accordingly, it is ORDERED as follows:

1. Defendant's Motion for Summary Judgment is GRANTED;

2. Judgment is entered in favor of defendant and against Mr. Kelver in the amount of $23,080.91, plus accrued interest from the date of the assessment and other statutory additions as provided by law, minus any credits;

3. Mr. Kelver's Complaint is dismissed with prejudice; and

4. Defendant may file a bill of costs within 20 days of the date of this order.