F I L E D
United States Court of Appeals
Tenth Circuit

SEP 6 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHRIS ANN EVANS,

     Plaintiff-Appellant,

v.

DEAN FOODS CO., a Delaware
Corporation; CREAM O'WEBER
DAIRY, INC.; and STEVE GRAHAM,

     Defendants-Appellees.

No. 99-4148
(D.C. No. 97-CIV-958-J)
(District of Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **ALLEY**[**],
District Judge.

Chris Ann Evans ("Evans") was employed in the accounting department of Cream

O'Weber Dairy, Inc., a wholly owned subsidiary of Dean Foods Company, in Salt Lake

City, Utah, from December 11, 1991, until she was discharged on November 14, 1996.

On or about April 30, 1997, a Charge of Discrimination, signed by Evans, was docketed

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Wayne E. Alley, Senior District Judge of the Western District of
Oklahoma, sitting by designation.

with the Utah Anti-Discrimination Division. On December 16, 1997, Evans filed in the United States District Court for the District of Utah a complaint, naming as defendants therein Dean Foods Company, a Delaware corporation, Cream O'Weber Dairy, Inc., a Utah corporation, and Steve Graham, an employee of the Cream O'Weber Diary ("defendants"). In that complaint Evans alleged that the defendants violated her federal statutory rights under Title VII of the Civil Rights Act of 1964 by discriminating against her because of her sex in connection with the terms and conditions of her employment; by permitting sexual harassment and maintaining a hostile work environment; and in retaliation for her opposition to such sexual discrimination and sexual harassment. 42 U.S.C. § 2000(e), *et seq.*

After an answer was filed, discovery ensued. On February 15, 1999, the defendants filed a motion for summary judgment. On April 12, 1999, Evans filed a response in opposition to defendants' motion. On April 26, 1999, the district court conducted a hearing on the motion for summary judgment, and, insofar as the present issues are concerned, took the matter under advisement. On June 23, 1999, in a detailed memorandum and order, the district court granted the motion for summary judgment and on June 25, 1999, entered judgment in favor of the defendants and dismissed Evans' cause of action, with each party to bear his or her or its own costs. Evans appeals. We affirm.

In granting summary judgment, the district court dismissed Evans' claim of sex

discrimination on the grounds that she had not filed a charge of sex discrimination with either the Utah Anti-Discrimination Division or the Equal Employment Opportunity Commission within 300 days of the sex discrimination. As concerns Evans' claim of retaliation, the district court held that Evans failed to make a sufficient showing that defendants' proffered reason for discharging her (long standing inability to get along and work with fellow employees) was pretextual. On appeal, Evans argues that the district court erred in both particulars. Our standard of review is *de novo. Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999), *cert. denied* 120 S.Ct. 1964 (2000)*; Aramburu v. Boeing Co.,* 112 F.3d 1398, 1402 (10th Cir. 1997). Some background facts are necessary.

As stated, Evans was employed by the Cream O'Weber Dairy in the accounting department from December 11, 1991 until her discharge on November 14, 1996. According to Evans, the sexual harassment began in 1993 and continued off and on until she was fired on November 14, 1996. She testified, in detail, in her deposition, *inter alia,* as to the sexual harassment by a fellow employee, Arlin Judd, starting in 1993 and continuing thereafter for two or three years. And there were many other instances of what Evans perceived as gender harassment in the work place. There was also much evidentiary matter before the district court that for several years preceding her termination Evans had shown an inability to work with some of her fellow employees, and in connection therewith that she had been warned, disciplined, on one occasion suspended, and later reinstated. On October 30, 1996, Evans and a female co-worker got into what

was described as a "physical confrontation," which led to her discharge two weeks later.

Evans filed an administrative claim of sex discrimination on April 30, 1997. It is agreed that under 42 U.S.C. § 2000e5(e)(1) a charge of sex discrimination had to be filed with either the Utah Anti-Discrimination Division or the Equal Employment Opportunity Commission within 300 days after the alleged unlawful employment practice occurred and that such filing is a "prerequisite" to a civil suit under Title VII. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir. 1993); *Aronson v. Gressly,* 961 F.2d 907, 911 (10th Cir. 1992). As concerns the events occurring in 1993, 1994 and 1995, Evans did not file within 300 days after their occurrence an administrative claim of sex discrimination. In this regard, counsel suggests that there were instances of sex discrimination which occurred within 300 days of April 30, 1997, the date when she did file a claim of sex discrimination with the Utah Anti-Discrimination Division, i.e., such occurring on or after July 4, 1996. In such circumstance it would appear that Evans might come under the "continuing violation" exception to the 300 day rule and could now rely on the events occurring in 1993, 1994 and 1995. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d at 1415. However, under the recent case of *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301 (10th Cir. 1999),[1] the "continuing violation" exception is not available to Evans. In that case we spoke as follows:

---

[1]*Bullington* was decided on August 12, 1999. The district court in the present case entered judgment on June 29, 1999.

- 4 -

The continuing violation doctrine "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin [v. Nannie and the Newborns],* 3 F.3d at 1415 n. 6. Thus, a continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred. *See id.* We agree with the district court's conclusion that, although the 1993 conduct is of the same general type as the 1995 conduct, the 1993 decision was a discrete and salient event that put Ms. Bullington on notice that United violated her rights. The allegations contained in Ms. Bullington's Amended Complaint clearly indicate that after United declined to hire her in January 1993, she spoke to Ms. Stuke in March 1993 and expressed her opposition to "what she believed . . . to have been sex and age discrimination by [United] in not selecting her for the position of line pilot." Because Ms. Bullington was, at the very least, on inquiry notice of the alleged discrimination as early as 1993, she had a duty to assert her rights at that time and she cannot rely on a continuing violation theory to avoid the statutory time bar.

*Bullington v. United Air Lines, Inc.,* 186 F.3d at 1311.

In this court, counsel argues that the district court erred in only considering sex discrimination of a prurient nature and that there were instances of sex discrimination of a non-prurient nature occurring within 300 days of April 21, 1997, and prior thereto. Counsel states that there can be Title VII sex discrimination of a non-prurient nature. We agree. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir. 1987). However, such does not bring the present case out from under *Bullington*. Evans, like Bullington, was "on inquiry notice" as early as 1993 of alleged sexual discrimination, regardless of the

variety, and accordingly "she had a duty to assert her rights at that time and she cannot rely on a continuing violation theory to avoid the statutory time bar." *See also Robbins v. Jefferson County School Dist. R-1,* 186 F.3d 1253, 1258 (10th Cir. 1999).

Evans also argues that the district court erred in dismissing her Title VII claim of retaliation. In so doing, the district court held that even assuming that Evans made a prima facie showing of sex discrimination, the defendants articulated a legitimate, nondiscriminatory business reason for discharging her, and that Evans, in turn, did not make a sufficient showing that the proffered reason for her discharge was pretextual. We agree. There was much evidence before the district court that Evans was discharged because of her continuing inability to get along with her fellow employees. Evans failed to demonstrate that the reason given was pretextual, or that the evidentiary matter in connection therewith was sufficient to create a jury question. In this regard, the relevant inquiry is not whether defendants' articulated reason for discharge was wise, fair or correct, but whether they honestly believed their reason and acted in good faith upon that belief. *Bullington* at 1318. In other words, Evans had to demonstrate "pretext," namely that the reason given was a sham and the true reason for her discharge was to retaliate for her opposition to sex discrimination.[2]

---

[2]In *Kendall v. Watkins,* 998 F.2d 848, 851 (10th Cir. 1993), *cert. denied* 510 U.S. 1120 (1994), we stated that a "mere showing" by an employee that his employer's articulated reason for adverse employment action was "wrong" or "unreasonable," and not a "sound business reason" or even a "fair one," was insufficient to show "pretext," citing *Gray v. University of Arkansas at Fayetteville,* 883 F.2d 1394, 1401 (8th Cir.

Judgment affirmed.

Entered for the Court.

Robert H. McWilliams
Senior Circuit Judge

---

1989). In *Gray*, the Eighth Circuit said "An employer's articulated reason for terminating a member of a protected class need not be a sound business reason, or even a fair one." *Id.* at 1401.